## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

DAVID WALSH,                                    )
                                                )
       Plaintiff,                           )
                                                )
v.                                              )          No. 3:06-1099
                                                )          Judge Nixon
METROPOLITAN LIFE INSURANCE, CO.;               )          Magistrate Judge Brown
GEORGIA PACIFIC CORPORATION                     )
LIFECHOICES PLUS BENEFITS PROGRAM,              )
LONG-TERM DISABILITY PLAN; and                  )
GEORGIA-PACIFIC CORP.,                          )
                                                )
       Defendants.                          )

### MEMORANDUM ORDER

Pending before the Court is Defendants' Motion for Judgment on the Administrative

Record ("Defendants' Motion") (Doc. No. 36) and Memorandum in Support (Doc. No. 37), filed

November 16, 2007. On December 17, 2007, Plaintiff David Walsh filed a Response in

Opposition (Doc. No. 45), and Defendants filed a Reply (Doc. No. 52) on January 10, 2008.

Also pending is Plaintiff's Motion for Judgment on the Pleadings ("Plaintiff's Motion")

(Doc. No. 38) and Brief in Support (Doc. No. 39), filed November 16, 2007. Defendants filed a

Response in Opposition (Doc. No. 43) on December 17, 2007, and Plaintiff filed a Reply (Doc.

No. 51) on January 10, 2008. Plaintiff filed a Motion to Ascertain Status (Doc. No. 53) on

August 13, 2008.

Plaintiff's Motion to Ascertain Status is **GRANTED**. For the reasons stated below,

Plaintiff's Motion is **GRANTED in part and DENIED in part** and Defendants' Motion is

**GRANTED in part and DENIED in part**.

-1-

## I.   BACKGROUND

Plaintiff David Walsh worked as a sales representative for Unisource Worldwide, Inc., a subsidiary of Defendant Georgia-Pacific Corporation ("Georgia-Pacific"), from December 1994 until October 2002.[1]  Plaintiff stopped working in early October 2002 because of chronic lower back pain.  He was eligible for long term disability ("LTD") benefits through an LTD benefits plan that Georgia-Pacific maintains for eligible employees ("Plan").

The Plan defines disability as follows:

> During the first 24 months following your elimination period, you are unable to earn more than 80% of your predisability earnings or indexed predisability earnings at your own occupation for any employer in your local economy.

> After the first 24 month period, you are unable to earn more than 80% of your indexed predisability earnings from any employer in your local economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience, and predisability earnings.

(Doc. No. 37 at 2); (Doc. No. 39 at 2).  Defendant Metropolitan Life Insurance, Company ("MetLife") is the Plan Administrator.  MetLife has authority to administer benefits in its discretion under the following Plan language:

> The Plan Administrator (and its delegate) shall have the exclusive responsibility and complete discretionary authority to control the operation and administration of the Plan, with all powers necessary to enable it to properly carry out such responsibility including but not limited to, the power to construe the terms of the Plan, to determine status and eligibility for benefits and to resolve all interpretive, equitable and other questions that shall arise in the operation and administration of the Plan.  The Plan Administrator has delegated to MetLife, with respect to claims made under the

---

[1]  All facts in this Section are taken from Defendants' Memorandum in Support (Doc. No. 37) and Plaintiff's Brief in Support (Doc. No. 39) unless otherwise noted.  The facts material to this Order are not in dispute.

Case 3:06-cv-01099   Document 56   Filed 03/09/09   Page 2 of 21 PageID #: 645

> Long-Term Disability Plan, the administrative and interpretive
> discretion to resolve long-term disability claim denials and appeals
> under the Plan's claims procedures.

(Doc. No. 37 at 3). LTD benefits are funded by Georgia-Pacific and in some instances, by participants. MetLife does not contribute to payment of Plan benefits.

Plaintiff applied for LTD benefits in February 2003 claiming disability due to chronic lower back pain.[2] Plaintiff provided MetLife with a statement of his condition, an attending physician statement ("APS") from Dr. Scott C. Standard, a treating neurosurgeon, and a list of Plaintiff's medications as prescribed by Dr. Kenneth E. Bartholomew, a treating pain management specialist. Plaintiff's APS stated that Plaintiff could work three (3) to four (4) hours per day, sit one (1) hour per day, stand two (2) hours per day, walk one (1) hour per day, and lift no more than 20 pounds occasionally. Dr. Greenhood, an Independent Physician Consultant, reviewed Plaintiff's file for MetLife. On April 21, 2003, Dr. Greenwood opined that Plaintiff could do sedentary work, but could not lift over 100 pounds, as his current occupation required. Plaintiff's claim for benefits was approved on April 21, 2003 on the basis that Plaintiff was totally disabled with respect to his current occupation. Plaintiff was awarded benefits dating from March 8, 2003, until such time as he ceased to be disabled under the Plan, or until he turned 65.

On April 25, 2003, Plaintiff received a letter from MetLife stating that he was required to apply for Social Security disability benefits and appeal any denial through the administrative law judge level.

---

[2] The parties dispute the date on which Plaintiff's application was submitted. (Doc. No. 39 at 2); (Doc. No. 37 at 3). This controversy in inconsequential to resolution of this action.

-3-

MetLife contacted Plaintiffs treating physician, Dr. Standard, on May 28, 2003. MetLife asked for information regarding Plaintiff's maximum improvement, Plaintiff's last two (2) visits to Dr. Standard's office, and whether Plaintiff had participated in a Functional Capacity Evaluation ("FCE"). Dr. Standard responded with notes from Plaintiff's last two (2) office visits and the opinion that Plaintiff was at maximum medical improvement. Dr. Standard also permitted Plaintiff's participation in an FCE so long as Plaintiff was not required to lift more than 15 pounds.

Plaintiff participated in an FCE on July 15 and 16, 2003. The FCE determined that, in the collective opinion of the administrating therapists, Plaintiff could perform sedentary work as defined by the U.S. Department of Labor. Dr. Standard concurred with this opinion by letter dated August 13, 2003.

MetLife commissioned an Employability Assessment by Christian Camfield on September 9, 2003 to determine the availability of employment for which Plaintiff was qualified in Plaintiff's locality. The Employability Assessment Report indicated the likelihood of such employment and recommended a Labor Market Survey to determine the factual existence of positions in Plaintiff's geographic region. Metlife requested that Corvel Corporation conduct a Labor Market Survey on October 3, 2003. CorVel Corporation found that eight (8) sales management positions in Plaintiff's local economy were available and within Plaintiff's physical capacities, skill level, and wage requirements.

On September 21, 2004, MetLife notified Plaintiff that it was reviewing his eligibility for continued LTD benefits under the Plan's "any occupation" definition of disability. MetLife requested certain documents of Plaintiff in conjunction with this review, and Plaintiff provided a

-4-

second LTD claim form and APS from Dr. Standard. In this second APS, Dr. Standard opined

that Plaintiff could work zero hours per day. MetLife followed up with Dr. Standard on

December 29, 2004, requesting information regarding the disparity between Dr. Standard's two

(2) APS's. Dr. Standard did not respond.

MetLife referred Plaintiff's file to Dr. Ito, an Independent Physician Consultant, in

association with its review of Plaintiff's continuing disability claim. On January 18, 2005, Dr.

Ito issued a report finding that Plaintiff could perform sedentary work. MetLife then

commissioned CorVel Corporation to perform Employability Analysis and complete a Labor

Market Analysis Report, which it completed on February 17, 2005, finding that four (4) jobs in

Plaintiff's local economy were within his physical capacities, skills, and wage requirements (80%

of his predisability income).

MetLife terminated Plaintiff's LTD benefits, effective March 7, 2005, by letter dated

March 9, 2005 ("Termination Letter"). In pertinent part, the Termination Letter stated:

> In sum, the medical [data] received and reviewed does not support
> continued inability to perform job duties of any occupation. Your
> physicians have released you to full time work duty with
> restrictions and limitations. Based on your abilities, training,
> education and experience you are able to perform the occupations
> identified in the labor market analysis. Therefore, since you no
> longer meet the definition of disability as defined by the policy,
> your benefits have been terminated . . . .

> . . . you may request a review of the claim in writing. This request
> for review should be sent to MetLife, at the address noted in this
> letter, no more than 60 days after you receive notice of denial of
> the claim. When requesting this review, please state the reason(s)
> you believe the claim was improperly denied and submit any
> medical or vocational information and any facts, data, questions, or
> comments you deem appropriate for us to give your appeal proper
> consideration.

-5-

(Doc. No. 39 at 4). Plaintiff responded by letter dated May 16, 2005, appealing the termination of benefits *pro se*. Plaintiff's letter stated that he suffered from severe, distracting lower back pain that occasionally radiated to other parts of his body. Plaintiff stated that he was taking large doses of pain medication that occasionally interfered with his concentration and ability to perform basic functions. Plaintiff did not submit any expert reports as part of his appeal, whether from physicians or employment specialists.

MetLife sent Plaintiff's file to two (2) Independent Physician Consultants in response to Plaintiff's appeal, Drs. Abukhalil and Mark. Both physicians found that Plaintiff was capable of performing sedentary work, and by letter dated July 26, 2005, MetLife affirmed its decision to terminate Plaintiff's LTD benefits. This letter notified Plaintiff that MetLife's decision to terminate benefits was now final and would not be reconsidered.

In December 2005, Plaintiff obtained legal counsel. Plaintiff's counsel sent MetLife updated medical records, a new ASP from Dr. Standard, a sworn statement, and medical records from Dr. Bartholomew in an effort to gain reconsideration of MetLife's termination of Plaintiff's LTD benefits. MetLife refused to revisit the case and reaffirmed its position that its termination of Plaintiff's LTD benefits was final.

Plaintiff filed a Complaint initiating this action on November 13, 2006 seeking review of MetLife's termination of his LTD benefits. (Doc. No. 1).

On April 2, 2005, the Social Security Administration ("SSA") determined that Plaintiff was disabled for purposes of SSA disability benefits. The SSA determination awarded Plaintiff benefits dating back to March 7, 2005. The Plan contains an offset provision for "OTHER INCOME BENEFITS," which states that "[y]our monthly benefit is reduced by other benefits

-6-

including: [b]enefits under the Federal Social Security Act (primary benefits only) . . ." (Doc.

No. 55 Ex. 1 at 2). The Plan also provides for "RECOVERY OF OVERPAYMENTS," which

permits the benefit claim processor to "[d]eman[d] an immediate refund of overpayment" for

"[r]etroactive awards received from sources providing other income benefits (described in the

'Other Income Benefits' section . . .)." (Id. at 3) The parties are in agreement that Plaintiff

received SSA benefits for the same period that Plaintiff was receiving LTD benefits under the

Plan, and that Plaintiff's SSA benefits thus resulted in a maximum possible overpayment under

the Plan of $37,008.13. Defendants have filed a Counterclaim for recovery of alleged

overpayments arising out of Plaintiff's award of Social Security benefits. (Doc. No. 10).


## II.    ANALYSIS

### 1.    Review of Plaintiff's Claim for LTD Benefits

#### A.    *Legal Standard*

The parties are in agreement that the terms of the Plan give MetLife the authority to

determine eligibility for LTD benefits in its discretion. Accordingly, MetLife's termination of

Plaintiff's benefits is subject to review under an abuse of discretion standard. Firestone Tire &

Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). However, a procedural challenge to a decision

to terminate benefits is reviewed *de novo*. Kent v. United of Omaha Life Ins. Co., 96 F.3d 803,

806 (6th Cir. 1996).

Plaintiff has raised both procedural and substantive challenges to MetLife's termination

of LTD benefits and denial of Plaintiff's appeal. Because the Court finds that a serious

procedural error undermined administrative review of Plaintiff's claim for benefits, the Court

-7-

remands this matter to MetLife for reconsideration in accordance with the proper procedural standards, as discussed below. Plaintiff's substantive challenges to MetLife's decision are therefore mooted and are not discussed in this Order.

### B. Plaintiff's Claims of Procedural Error

Plaintiff's claim of procedural error in denial of his LTD benefits stems from the Termination Letter that MetLife sent to Plaintiff on March 9, 2005. Plaintiff claims that MetLife's Termination Letter falls short of ERISA requirements in three (3) respects: (1) MetLife instructed Plaintiff that an appeal of his benefits termination was to be filed within 60 days, rather than 180, as ERISA requires; (2) MetLife failed to notify Plaintiff of the reasons his benefits were terminated; and (3) MetLife failed to notify Plaintiff of the materials that would be necessary to perfect his claim. (Doc. No. 39 at 17 n.5). Because the Court considers remand appropriate on the basis of Plaintiff's first claim of procedural error, the Court does not consider Plaintiff's second and third claims.

### i. The Termination Letter Violates ERISA § 503

ERISA § 503 requires that:

> In accordance with the regulations of the Secretary, every employee benefit plan shall –
>
>> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>>
>> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

-8-

29 U.S.C. § 1133. The Secretary's regulations are codified at 29 C.F.R. § 2560.503-1. These regulations "set[] forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits . . . ." Id. at § 2560.503-1(a). In pertinent part, § 2560.503-1 states:

> (h) Appeal of adverse benefit determinations.
> (1) In general. Every employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination.
>
> (3) Group health plans. The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless . . . the claim procedures –
>
> > (i) Provide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination; . . . .

Id. at §§ 2560.503-1(h)(1); 2560.503-1(h)(3)(i).

It is undisputed that MetLife's Termination Letter informed Plaintiff that he had 60 days, not 180, in which to appeal termination of LTD benefits. However, Defendants argue that this fact represents a slight "deviation from . . . precise technical compliance with ERISA" (Doc. No. 37 at 14) that should be excused under Kent v. United of Omaha Life Insurance Company, 96 F.3d 803 (6th Cir. 1996). Kent established the doctrine of "substantial compliance" in this Circuit, whereby a technical failure to comply with ERISA's procedural requirements must be excused if, upon review of all communications between a claimaint and the fiduciary, it is clear that the purposes of § 1133 were satisfied. Id. at 807.

MetLife does not contend that any subsequent communications corrected the error in its Termination Letter. Instead, MetLife argues that the purposes of § 1133 were met because Plaintiff appealed the termination of LTD benefits within the 60-day time frame, and because, according to MetLife, MetLife *would have* considered any materials submitted by Plaintiff within the 180-day period. MetLife asserts that Plaintiff's § 1133 argument is "disingenuous and without merit" because Plaintiff did not submit additional materials pertinent to his appeal until approximately 90 days after the 180-day deadline had tolled. (Doc. No. 37 at 15).

MetLife's substantial compliance argument is without merit. The purpose of ERISA § 503 is to insure that the ERISA claimant is notified of the specific reasons for termination of benefits and provide an opportunity for a full and fair review. Wenner v. Sun Life Assur. Co. of Canada, 482 F.3d 878, 882 (6th Cir. 2007). In lengthening the period in which a claimant is permitted to appeal an LTD benefits termination under a group health plan, the Department of Labor noted that 180 days was necessary to insure that a claimant had sufficient time to consider and prepare an appeal. PENSION AND WELFARE BENEFITS ADMINISTRATION, 63 Fed. Reg. 48390, 48393 (Sept. 9, 1998). MetLife's Termination Letter thus deprived Plaintiff of the time the Department of Labor deems necessary to perfect an appeal in clear contravention of the purpose of § 1133.

Furthermore, MetLife's procedural error wrought significant substantive prejudice. Plaintiff's rushed appeal was completed *pro se* and contained no supporting documentation beyond Plaintiff's own affidavit. Plaintiff has since retained counsel who has filed numerous documents and medical reports to perfect Plaintiff's claim. Additionally, the Court concurs with Plaintiff that, in arguing that Plaintiff was free to supplement his appeal at any point within the

-10-

180-day period, it is MetLife that has pleaded disingenuously. MetLife notified Plaintiff that its denial of his appeal was final and that no further materials would be considered at the administrative level. Plaintiff thus had no reasonable way of knowing his rights had been violated and that he had an additional 120 days in which to supplement his appeal. For these reasons, the Court finds that MetLife did not substantially comply with ERISA § 503.

Defendants argue that any reconsideration of Plaintiff's appeal would be a "useless formality" under Kent, meaning that MetLife's decision was clearly correct in spite of any violation of § 1133. 96 F.3d at 807. As a result, Defendants argue, Plaintiff should be denied any remedy and MetLife's decision should be upheld.

The Court rejects this argument. While the Court declines to address the merits of Plaintiff's appeal, it is clear from only the most cursory review of the new evidence submitted by Plaintiff in this action that appeal would not be useless. Accordingly, some remedy is in order.

### ii. Remedy

#### (a) Reinstatement of Benefits Is Improper

Where an administrator's decision to deny an appeal of termination of benefits is marred by violation of ERISA § 503, the administrator's decision is invalid. See, e.g., Wenner, 482 F.3d at 883; McCartha v. National City Corp., 419 F.3d 437, 444 (6th Cir. 2005); Sanford v. Harvard Industries, Inc., 262 F.3d 590, 599 (6th Cir. 2001); Vanderklok v. Provident Life and Acc Ins. Co., Inc., 956 F.2d 610, 617 (6th Cir. 1992). The question before the Court is one of remedy.

Plaintiff argues that under Wenner, the proper remedy is immediate reinstatement of benefits by this Court. 482 F.3d at 883. In Wenner, the plaintiff received notice of termination of benefits that was defective under § 1133. Id. at 882. Citing Ford v. Uniroyal Pension Plan, 154

-11-

F.3d 613, 618 (6th Cir. 1998) for the proposition that the remedy for violation of § 1133 must

return the claimant to the status quo *ex ante* with respect to the procedural error, the Sixth Circuit

held that, "it is appropriate to reinstate all benefits from the invalid termination" because "when

an initial grant of benefits has been terminated in violation § 1133, the benefits have '*never been*

*properly revoked.*'" Wenner, 482 F.3d at 883 (quoting Sanford, 262 F.3d at 599) (emphasis

added in Wenner). According to Plaintiff, MetLife's defective Termination Letter likewise

undermines the validity of its revocation of Plaintiff's benefits and mandates the remedy of

reinstatement.

Defendants argue that Wenner is not on point, and the Court agrees – Wenner is

distinguishable. In this case, disability is defined by the Plan with respect to two (2) different

time periods: (1) the first 24 months following the claimant's elimination period, and (2) any

time subsequent to the initial 24 months. This distinction is significant. "Disability" in the first

time period refers only to a claimant's abilities with respect to his "own occupation," whereas the

second time period entails a more exacting "any occupation" standard.

Plaintiff in this case was receiving LTD benefits under the "own occupation" definition of

disability. Regardless of MetLife's violation of § 1133, Plaintiff's receipt of these benefits was

due to terminate at the end of two (2) years. Plaintiff was never found disabled under the "any

occupation" definition of benefits, and indeed MetLife terminated LTD benefits after two (2)

years based upon its finding that Plaintiff was not so disabled. This is exactly the set of facts

present in University Hospitals of Celeveland v. South Lorain Merchants Association Health and

Welfare Benefit Plan and Trust, 431 F.3d 430 (6th Cir. 2006), a case in which the Sixth Circuit

did not reinstate benefits, and which the Wenner Court distinguished when it did. 482 F.3d at

-12-

883.

Because <u>Wenner</u> is distinguishable, reinstatement of benefits in this case would provide

Plaintiff with a windfall rather than returning him to the position he would have occupied but for

MetLife's violation of § 1133. As a result, reinstatement of benefits is improper under <u>Uniroyal</u>

<u>Pension Plan</u>,154 F.3d at 618, and Plaintiff should instead be afforded an appeal of MetLife's

denial of LTD benefits. <u>See Proffitt v. Group Long Term Disability Plan for Family Practice</u>

<u>Center</u>, 2007 WL 2692177, at *11 (E.D. Tenn. Sept. 12, 2007) (citing <u>Williams v. Int'l Paper</u>

<u>Co.</u>, 227 F.3d 706, 715 (6th Cir. 2000)) (holding that remand is proper where a factual

determination must be made regarding the claimant's entitlement to benefits).

(b)     Remand to the Plan Administrator Is Proper

The Court has so far concluded that Plaintiff suffered a violation of § 1133, and that

Plaintiff must therefore be afforded a new opportunity to appeal MetLife's termination of

Plaintiff's LTD benefits. The logically subsequent question is which body is most appropriate to

decide Plaintiff's appeal in the first instance, MetLife, or this Court?

Plaintiff argues that – in the event the Court declines to reinstate LTD benefits – this

Court should preside over Plaintiff's appeal of termination of benefits and permit Plaintiff to

supplement the record. In support, Plaintiff cites <u>Vanderklok v. Provident Life and Ace</u>

<u>Insurance Company, Inc.</u>, 956 F.2d 610 (6th Cir. 1992), in which the Sixth Circuit held:

> [i]n the present case, plaintiff was not given the opportunity to
> present additional evidence to defendant Provident in an
> administrative appeal because Provident failed to follow the
> statutory notice requirement. The failure to follow administrative
> review procedures was Provident's, not plaintiff's. Therefore, we
> do not believe it is necessary to require that plaintiff first submit
> additional evidence to Provident before bringing an appeal before

-13-

> the district court. We agree with plaintiff that the appropriate
> remedy is to remand to the district court with instructions to
> reconsider the issue of disability after plaintiff has been given the
> opportunity to submit additional evidence.

Id. at 617. This excerpt from Vanderklok lists no particular set of facts as supporting the

decision to remand to the district court rather than the plan administrator, apart from the fact that

"failure to follow administrative review procedures was . . . [defendant's], not plaintiff's." Id.

Of course, where a plaintiff brings suit for termination of benefits alleging violation of § 1133,

any actual procedural error will almost always belong to the defendant. On its face, then,

Vanderklok would seem to stand for the proposition that anytime violation of § 1133 bars a

plaintiff from introducing new evidence, the district court should consider the new evidence and

determine plaintiff's appeal without first remanding to the plan administrator.

The Sixth Circuit has lent support to this interpretation of Vanderklok. See Univ. Hosps.

V. S. Lorain Merchs. Ass'n Health & Welfare Benefit Plan & Trust, 441 F.3d 430, 434 (6th Cir.)

(holding, on facts analogous to those of the present case, that "[u]nder Vanderklok, rather than

remand the case, the district court should have conducted the review of the case itself and

permitted [plaintiff] University Hospital to introduce additional evidence"); Adams v. S. Labor

Union Pension Trust Fund, 1999 WL 617959, at *2 (6th Cir. Aug. 12, 1999) ("where a failure to

follow ERISA's procedures and policies rests with the defendant plan, the appropriate remand is

to the district court in the first instance"); Vance v. G.H. Bass & Co., 1998 WL 80185, at *4 (6th

Cir. Feb. 18, 1998).

However, Vanderlock and its progeny run contrary to a body of Sixth Circuit case law

that counsels district courts against considering new evidence. In Perry v. Simplicity

-14-

Engineering, the Sixth Circuit found that:

> [n]othing in the legislative history [of ERISA] suggests that Congress intended that federal district courts would function as plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits. Such a procedure would frustrate the goal of prompt resolution of claims by the fiduciary under the ERISA scheme.

900 F.2d 963, 966 (6th Cir. 1990). While Vanderklok explicitly distinguished Perry, Vanderklok provided little in the way of counter-argument to Perry's concern for the expansion of the district court's role in ERISA enforcement, particularly given that Vanderklok seems to suggest significant expansion of the role for district courts. The tension between Vanderklok and Perry has resulted in rejection of Vanderklok where it would seemingly control. See, e.g., Killian v. Healthsource Provident Adm'rs., 152 F.3d 514, 522 (6th Cir. 1998) (in case where administrator's decision was marred by conflict of interest which prevented consideration of all of plaintiff's submissions, Court reversed and remanded to the administrator, holding "[t]here can be no dispute in this circuit, in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator") (citing Perry, 900 F.2d at 966). This occurrence is particularly common at the district level. See, e.g., Shave v. Reynolds, 2008 WL 2788063 (S.D. Ohio July 15, 2008); Weddel v. Ret. Comm. of Whirlpool Prod. Employees, 2007 WL 4521509 (N.D. Ohio Dec. 17, 2007); Snyder v. Blue Cross & Blue Shield of Mich., 2007 WL 2050812 (E.D. Mich. July 18, 2007); Gilliam v. Hartford Life & Acc. Ins. Co., 2006 WL 2873475 (E.D. Ky. Oct. 5, 2006); Allen v. Life Ins. Co. of N. America, 2006 WL 39350 (E.D. Ky. Jan. 4, 2006); Mitchell v. First Union Life Ins. Co., 65 F. Supp. 2d 686 (S.D. Ohio 1998).

-15-

Several Sixth Circuit judges attempted to clarify the apparent conflict between Vanderklok and Perry in Wilkins v. Baptist Healthcare Systems, Incorporated, 150 F.3d 609 (6th Cir. 1998). In Wilkins, the Sixth Circuit determined that the Rule 56 summary judgment standard was inapplicable to ERISA claims. Id. at 616-17. In a concurring opinion, Judges Gilman and Ryan went further to suggest a protocol for district courts hearing ERISA claims, which included the following language:

> 1. . . . The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.
>
> 2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.

Id. at 619 (concurring opinion). The Sixth Circuit has since adopted this protocol. See, e.g., Buchanan v. Aetna Life. Ins. Co., 179 Fed. Appx. 304, 308 (6th Cir. 2006).

Wilkins works a subtle adaptation of Vanderklok, making the decision of a district court to hear new evidence discretionary with the language "[t]he district court *may* consider evidence outside of the administrative record . . . ." Id. (emphasis added). Recent Sixth Circuit decisions have echoed this view of the district court's choice of remedy as discretionary in cases of procedural error. See, e.g., Buchanan, 179 Fed. Appx. at 308; McCartha v. National City Corp., 419 F.3d 437, 444 (6th Cir. 2005) ("[I]f the denial notice is not in substantial compliance with § 1133, reversal and remand to the district court or to the plan administrator is ordinarily appropriate").

-16-

Perhaps more significantly, the language of <u>Wilkins</u> suggests how district courts should employ their discretion in crafting remedies to procedural errors in ERISA claims. <u>Wilkins</u> suggests that "lack of due process . . . or . . . bias" by the plan administrator are circumstances under which a district court should examine new evidence and resolve ERISA disputes without remand to the plan administrator. 150 F.3d at 619; <u>see also</u>, <u>Storms v. Aetna Life Ins. Co.</u>, 156 Fed. Appx. 756, 759 (6th Cir. 2005). In this context, "lack of due process" would seem to refer to some procedural error apart from the underlying violation of § 1133 – something on a par with bias, which would suggest to a district court that the ERISA claimant might not receive impartial adjudication of his claim on remand to the administrator.

This interpretation of <u>Wilkins</u> suggests the following rule for determining the proper remedy for violation of § 1133: remand to the plan administrator is generally proper, but consideration of new evidence by the district court is permissible in those special circumstances suggesting an absence of due process at the administrative level. Support for this interpretation can be found not only in <u>Wilkins</u>, but also in (1) <u>Perry</u> and (2) the decisions of other district courts within this circuit.

First, this guideline for remedies is intuitive insofar as it aligns with the reasoning of <u>Perry</u>, that the role of district courts should generally not be enlarged in the ERISA context in light of concerns for efficiency and expedience. However, district courts clearly must intervene where remand would not protect the procedural rights of the claimant.

Second, the stated reasoning and decisions of district courts in this Circuit reflect the principle that remand to the administrator is the proper remedy for violation of § 1133 except where the administrator's decision-making has been shown to be suspect. <u>See</u> <u>Gilliam v.</u>

-17-

Hartford Life & Acc. Ins. Co., 2206 WL 2873475, at *9-11 (E.D. Ky. Oct. 5, 2006) (summarizing district court decisions under different factual circumstances and finding that district court should determine claimant's action itself and consider new evidence only where "concerns persist over Plaintiff's ability to again receive due process upon remand to the administrator").

For all of these reasons, the Court adopts the above-mentioned rule: a district court should review new evidence and determine an ERISA plaintiff's claim only where a plan administrator has violated § 1133 and shown itself incapable of protecting the plaintiff's procedural rights.

On the facts of this case, the Court cannot say that Plaintiff would be unlikely to receive due process upon remand to the plan administrator. There is no evidence that MetLife's violation of § 1133 was intentional. To the contrary, it is probable that MetLife simply sent Plaintiff an outdated, form Termination Letter defining the period for appeal as within 60 days – the previous ERISA time period as defined by regulation. Plaintiff has made some argument that MetLife's Termination Letter was otherwise deficient because it failed to notify Plaintiff of the information necessary to perfect his claim, but even accepting these arguments *arguendo*, it remains the case that MetLife manifested diligence in researching and investigating Plaintiff's claims. In particular, MetLife sought review of Plaintiff's appeal by two (2) new physicians, though Plaintiff – understandably, in light of MetLife's procedural error – proffered no new evidence at that time. Finally, Plaintiff has also alleged that MetLife suffers from a conflict of interest because it is under contract with Georgia-Pacific to administrate benefits under the Plan. However, Plaintiff has submitted no evidence of actual bias in MetLife's Plan administration.

-18-

For these reasons, the Court does not find the sort of threat to Plaintiff's due process rights that would require the Court to determine Plaintiff's appeal of LTD benefits termination on the basis of new evidence. Accordingly, the Court orders the matter remanded to MetLife, the Plan administrator.

2.    Defendants' Counterclaim for Overpayment of LTD Benefits

It is undisputed that the Plan provides for recovery of overpayments, and that Plan benefits are to be reduced by other income benefits, such as SSA disability benefits. There is also no dispute that the maximum overpayment to Plaintiff under the plan is $37,008.13. It is on this basis that Defendants seek reimbursement in the amount of $37,008.13 under ERISA § 502(a)(2). 29 U.S.C. § 1132(a)(3).

ERISA § 502(a)(3) provides that:

> [a] civil action may be brought – . . .
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

Id.

Plaintiff concedes that, should Plaintiff be awarded LTD Plan benefits going forward, such LTD benefits may be reduced in the amount necessary for Georgia Pacific to recover the $37,008.13 overpayment. However, Plaintiff argues that "there is no term of the plan that permits MetLife to recover funds that it now claims were overpaid in the past while MetLife is refusing to pay ongoing benefits." (Doc. No. 45 at 21). Plaintiff argues under the *expressio unius* canon that because the Plan contains specific details for how overpayments are to be

-19-

recovered prospectively while LTD Plan benefits are ongoing, the absence of a similar explanation for reimbursement when LTD Plan benefits have terminated signifies that the Plan does not cover reimbursement under such circumstances. (Id. at 21 n.5).

The Court finds Plaintiff's interpretation of the Plan unpersuasive. The better explanation for the Plan's relative absence of detail regarding recovery of overpayments once LTD Plan benefits have ceased is that the method of recovery in such instances is self-explanatory. If a claimant is overpaid under the terms of the Plan and LTD benefits have terminated, the claim processor may simply demand a lump-sum recovery. Indeed, the Plan states that "[t]he benefit claim processor may, at its option, recover the overpayment by: . . . [d]emanding an immediate refund of the overpayment from you." (Doc. No. 55 Ex. 1 at 2). The Court finds that no further detail is necessary, and therefore that the Plan clearly provides for recovery of the $37,008.13 overpayment in this case.

Plaintiff next argues that Defendants may not recover the overpayment because ERISA § 502(a)(3) only provides for "equitable relief," and that equitable relief does not encompass recovery from Plaintiff's general assets or social security benefits. (Doc. No. 45 at 23). According to Plaintiff, because the overpayment demanded by Defendants was originally $39,137.00 – a figure representing Plaintiff's SSA benefits as not reduced by Plaintiff's attorneys' fees – Defendants are seeking funds from either general assets or social security benefits. This argument must fail. Defendants corrected their overpayment calculation and now concur with Plaintiff that the proper figure is $37,008.13. Defendants are thus clearly seeking reimbursement for overpaid LTD benefits, not social security benefits or Plaintiff's general assets. Moreover, because the terms of the Plan provide for recovery of overpaid benefits, the

-20-

LTD benefits that Plaintiff received were the subject of an equitable lien. <u>Sereboff v. Mid Atl.</u> <u>Med. Servs., Inc.</u>, 547 U.S. 363-64 (2006). Defendants are seeking recovery from the specific funds of that equitable lien, not from Plaintiff's social security benefits or general assets. As a result, the Court finds for Defendants on their counterclaim, and Plaintiff is liable for reimbursement of the $37,008.13 overpayment.

### III. CONCLUSION

For the reasons discussed above, Plaintiff's Motion and Defendants' Motion are both **GRANTED in part and DENIED in part.** Plaintiff's Motion is granted insofar as the Court finds that MetLife violated § 1133 by sending Plaintiff procedurally defective notice of termination of Plaintiff's LTD benefits. Plaintiff's Motion is denied insofar as the Court rejects the remedies of reinstatement of benefits and determination of Plaintiff's appeal by this Court. The Court **REMANDS** this matter to the Plan administrator.

Defendants' Motion is granted insofar as the Court finds for Defendants on their counterclaim seeking recovery of overpayment of LTD benefits in the amount of $37,008.13. Defendants' Motion is denied insofar as the Court finds that MetLife violated § 1133 and that remand is proper.

It is so ORDERED.

Entered this _____9_____ day of _____March_____, 2009.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

-21-